**Rosa HOBBS, Plaintiff,**

v.

**GEORGIA DEPARTMENT OF TRANSPORTATION and its agents, Jerry Gossett, Tony Chambers and Archie C. Burnham, Defendant.**

**Civ. A. No. 4:89–cv–249–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Oct. 18, 1991.

On Motion for Reconsideration
Jan. 31, 1992.

---

Warren N. Coppedge, Jr., Mitchell Coppedge Wester Bisson & Miller, Dalton, Ga., Samuel F. Robinson, Jr., phv, Robinson & Crutchfield, Chattanooga, Tenn., for plaintiff.

J. Clinton Sumner, Jr., Rogers Magruder Sumner & Brinson, Rome, Ga., for E.E. Roberts, Harry Roberts and Shirley Roberts.

John W. Davis, Jr., David James Dunn, Gleason & Davis, Rossville, Ga., Theodore Freeman, Nena Kaye Puckett, Drew Eckl & Farnham, Atlanta, Ga., for City of Fort Oglethorpe.

Henry C. Tharpe, Jr., Kinney Kemp Pickell Sponcler & Joiner, Dalton, Ga., for Georgia Dept. of Transp., Jerry Gossett, Tony Chambers, Archie C. Burnham and Ronald K. Colbin.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Defendants' Motion to Stay Proceedings to Enforce Judgment, Defendants' Motion for Judgment Notwithstanding the Verdict (JNOV), or in the alternative, Motion for a New Trial and Defendants' Motion to Review Taxation of Costs. This Court grants Defendants' Motion JNOV finding that it is without jurisdiction to hear this case. Accordingly, Defendants' Motion to Stay Proceedings to Enforce Judgment and Defendants' Motion to Review Taxation of Costs are denied as Moot.

## MOTION JNOV or NEW TRIAL

In Defendants' Motion JNOV, or a New Trial, Defendants allege that several errors occurred in the three day trial held between August 26, 1991, and August 28, 1991.[1] First, Defendants again allege that the Georgia Department of Transportation (GDOT) never waived its Eleventh Amendment sovereign immunity defense.[2] Second, they claim that the evidence introduced at trial to establish an agency relationship was inadequate to impose liability on the individual Defendants. Third, Defendants argue that the facts were insufficient to show any type of negligence on behalf of any of the named Defendants. Finally, they contend that no causal connection existed between the deficient traffic counts and the re-timing of the traffic signals. Plaintiff argues, however, that Defendants did waive their Eleventh Amendment immunity and that the evidence was sufficient to support the jury's verdict as to all essential elements and, therefore, Defendants' motion should be denied. Because this Court finds that Defendants have not waived their Eleventh Amendment immunity, the Court will not address the other allegations.

## ELEVENTH AMENDMENT IMMUNITY

■ The Eleventh Amendment states: "The Judicial power to the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

---

1. On August 28, 1991 a jury found the Defendants negligent and awarded Plaintiff Rosa Hobbs $100,000 in damages. The Court entered judgment for $80,000 plus 12% interest on $75,000 from February 23, 1990 to the date of judgment, August 29, 1991.

2. The Defendants perfunctorily raised this argument during the trial and were denied relief at that time.

U.S.CONST. amend. XI.[3] This amendment acts as a restriction on federal judicial power by limiting a person's ability to sue a state in federal court. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). A state is entitled to this immunity whether the suit is by one of its own citizens or by a citizen of another state. *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

There are two ways in which Eleventh Amendment immunity may be abrogated: (1) Congress may waive a state's immunity by explicit Congressional enactment; or, (2) a state may itself waive its Eleventh Amendment immunity and consent to be sued in federal court. *Gamble v. Florida Dept. of Health & Rehabilitation Serv.*, 779 F.2d 1509 (11th Cir.1986). As this case does not concern any federal laws or constitutional rights, this Court will only address a state's ability to waive its Eleventh Amendment immunity.

According to *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1984), a state may waive its Eleventh Amendment immunity only if there is "an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Id.* at 238 N. 1, 105 S.Ct. at 3145 n. 1. This stringent standard has arisen because "[a] state's constitutional interest in immunity encompasses not merely **whether** it may be sued, but **where** it may be sued." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1983). Accordingly, this waiver will be found "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construc-

tion." *Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518, 1522 (11th Cir. 1983) (citations omitted). *See Brady v. Michelin Reifenwerke*, 613 F.Supp. 1076, 1082 (D.Miss 1985) (stating alleged waiver must "specify the state's intent to be sued in **federal court**.").

A general waiver allowing a state to be sued in its own courts is not enough to show that the state agreed to be sued in federal court. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1984) (Eleventh Amendment immunity not waived despite California statute stating that "suits may be brought against the state in such manner and in such courts as directed by law"); *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730 (11th Cir.1984) (immunity not waived even where statute stated state agency can be sued "to same extent as natural person."). *See also Westinghouse Elec. v. West Virginia Dept. of Highways*, 845 F.2d 468 (4th Cir.1988), *cert. denied*, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988); *Gamble v. Florida Dept. of Health & Rehab. Services*, 779 F.2d 1509 (11th Cir.1986); *Brady v. Michelin Reifenwerke*, 613 F.Supp. 1076 (D.Miss. 1985) (Eleventh Amendment immunity not waived when state statute establishes waiver of sovereign immunity for procurement of state liability insurance).

The GDOT claims it is immune from suit under the Eleventh Amendment. This assertion is grounded in GDOT's existence as a state agency[4] and that the Eleventh Amendment bars actions against the state unless the state unequivocally waives its Eleventh Amendment immunity.[5] Defendants contend that the sovereign immunity waiver in the Georgia Constitution only applies to state court, and does not apply to being sued in federal court.

---

**3.** This amendment was passed because of the uproar created by the Supreme Court's decision in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793). *See Monaco v. Mississippi*, 292 U.S. 313, 325–27, 54 S.Ct. 745, 749–50, 78 L.Ed. 1282 (1933).

**4.** *See* O.C.G.A. § 32–2–2 (1991).

**5.** In Eleventh Amendment jurisprudence, suits against state agencies seeking monetary damages are construed as suits against the state itself. *See Employees of Dept. of Public Health and Welfare, Missouri v. Department of Public Health and Welfare, Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

Plaintiff argues, however, that Eleventh Amendment immunity does not apply in this case because the funds to satisfy this judgment will not come from the public treasury. Instead, the funds will come from the insurance fund statutorily created to indemnify the state in these types of actions. Therefore, Plaintiff concludes that because the Eleventh Amendment protection was created to protect the state treasury and because the judgment in this case will be satisfied without public funds, the Eleventh Amendment does not apply in this case.

In addition, Plaintiff contends that although the GDOT is a state agency, the agency's participation in this fund waives any immunity the agency may have had. According to the Plaintiff, the creation of this insurance fund acts as a waiver of sovereign immunity to the extent of the insurance coverage. Consequently, Plaintiff maintains that if the state constitution creates a circumstance for waiving sovereign immunity, and that circumstance is fulfilled, it follows that the state's Eleventh Amendment immunity is also waived.

■ Plaintiff's argument concerning the nature of the funds which will be used to satisfy a judgment in this case, is an attempt to circumvent the stringent test for waiving Eleventh Amendment immunity. While it is true that the Eleventh Amendment was created to protect the public fisc,[6] the mere creation of an insurance fund to protect the state treasury does not act as an implicit waiver of the state's Eleventh Amendment immunity. *See Westinghouse Elec. v. West Virginia Dept. of Highways,* 845 F.2d 468 (4th Cir. 1988), *cert. denied,* 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988); *Gamble v. Florida Dept. of Health & Rehab. Services,* 779 F.2d 1509 (11th Cir.1986); *Brady v. Michelin Reifenwerke,* 613 F.Supp. 1076 (D.Miss.1985). A state is entitled to its

Eleventh Amendment immunity until it specifically waives this immunity, not until it creates an insurance fund. Although Plaintiff's argument appeals to the Court's practical instincts, it cannot be sustained when viewed in light of the Supreme Court's consistent holdings requiring an exact and unequivocal abrogation of a state's Eleventh Amendment immunity before it can be sued in federal court. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1984); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1983); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

In addition to arguing that the Eleventh Amendment should not apply in this case, Plaintiff maintains that the state has explicitly waived its immunity in the Georgia Constitution. The Georgia Constitution states in pertinent part:

> Sovereign immunity extends to the state and all of its departments and agencies.... [T]he defense of sovereign immunity is waived as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance protection provided.

GA.CONST.Art. 1, § 2, ¶ 9. Accordingly, the Georgia courts have interpreted this provision to mean that the state has waived its immunity in state court to the extent of the liability insurance coverage procured.[7] *Dugger v. Sprouse,* 257 Ga. 778, 364 S.E.2d 275 (1988); *Martin v. Georgia Dept. of Public Safety,* 257 Ga. 300, 357 S.E.2d 569 (1987), *cert. denied,* 484 U.S. 998, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988).

■ This constitutional provision that Plaintiff relies on, however, also specifical-

---

**6.** *See Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355; *Fouche v. Jekyll Island–State Park Auth.,* 713 F.2d 1518 (11th Cir.1983); *Davis v. Griffin–Spalding County, Georgia,* 445 F.Supp. 1048 (N.D.Ga.1975).

**7.** This section of the 1983 Constitution was amended in 1990 so as to do away with the waiver of sovereign immunity to the extent of the state's liability insurance coverage. This new amendment, however, is not applicable in this case because the incident in question took place in 1988.

ly preserves any rights the state may have under the Federal Constitution. "No waiver of sovereign immunity shall be construed as a waiver of any immunity provided the state or its departments and agencies by the United States Constitution." GA.CONST.Art. 1, § 2, ¶ 9. This second phrase preserves the state's Eleventh Amendment immunity against being sued in federal court. Therefore, instead of referring to an "unequivocal indication that the State intends to consent to federal jurisdiction" *Atascadero*, 473 U.S. at 238 n. 1., 105 S.Ct. at 3145 n. 1. Plaintiff points to a constitutional provision which expressly reserves the state's Eleventh Amendment immunity. Although the state has waived its sovereign immunity in state court, this provision cannot be read as waiving the state's Eleventh Amendment immunity in federal court.[8]

This Court realizes that its decision causes Plaintiff, a citizen of Tennessee, to be deprived of her right, under diversity jurisdiction, to choose a federal forum granted her in Article III of the Constitution. A choice of forum, however, is only available when two courts have jurisdiction over the same cause of action.[9] In this case, the Eleventh Amendment specifically prohibits the federal courts from obtaining jurisdiction in cases brought against another sovereign entity (a state). So unless that other sovereign specifically consents to being sued in a federal court, the federal court does not have jurisdiction to hear the case.

**CONCLUSION**

Plaintiff's argument that the proceeds to satisfy the judgment will come from an insurance fund and not directly from the state's treasury "cannot circumvent the constitutional prowess of the Supreme Court's recent pronouncements which require that the state statute specify the state's intent to be sued in federal court." *Brady*, 613 F.Supp. at 1076. *See Atascadero*, 473 U.S. at 241, 105 S.Ct. at 3146–47 ("[I]n order for a state statute ... to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in federal court"). Without an explicit provision stating that the creation of this insurance fund waives both state sovereign and Eleventh Amendment immunity, this Court cannot conclude that the state has waived its Constitutional immunity from being sued in federal court.

Although this Court is aware of the apparent injustice created by allowing Defendants to challenge this case on jurisdictional grounds at this late stage in the proceedings, the Court notes that constitutional immunity is a question of jurisdiction which can be raised at any time during the legal process by either party or sua sponte by the Court. *See* Fed.R.Civ.P. 12(h)(3); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 910 (10th Cir.1974). It can even be raised for the first time on appeal. *Edelman*, 415 U.S. at 677–78, 94 S.Ct. at 1362–63. Therefore, because the state has not

8. "Sovereign immunity antedates eleventh amendment immunity and is a separate and distinct concept. A finding respecting either the waiver or applicability of one does not necessarily mandate the same result as to the other." *Karpovs v. State of Mississippi*, 663 F.2d 640, 645 (5th Cir.1981).

9. A state may not statutorily destroy a foreign citizen's right to resort to diversity jurisdiction by affirmatively limiting where an action may be filed. For example, a state may not legislate that a tort action can only be filed in a state court. *See Markham v. City of Newport News*, 292 F.2d 711, 713–15 (4th Cir.1961). In other words, a state cannot statutorily prevent a federal court from obtaining diversity jurisdiction, just because the lawsuit is based on state law. If the right is enforceable in state court, that

right is also generally enforceable in federal court.

In the case at bar, however, the state is not limiting where an action may be filed. It is the United States Constitution which imposes a limitation upon where the suit may be filed. Here, the more specific Eleventh Amendment works to circumscribe the more general grant of jurisdiction in Article III. *See Edelman*, 415 U.S. at 660–63, 94 S.Ct. at 1354–55. Consequently, even though the federal court would have had jurisdiction of this case if it involved two private citizens of different states, the federal courts do not have jurisdiction when the defendant is a state or one of its agencies and the state does not explicitly waive its Eleventh Amendment immunity.

specifically waived its Eleventh Amendment immunity or consented to being sued in federal court, the Court does not have jurisdiction over GDOT and, accordingly, grants Defendants' Motion JNOV in favor of GDOT.[10]

■ Moreover, although Defendants do not assert Eleventh Amendment immunity on behalf of the individual Defendants, the Court concludes that the individual Defendants are also entitled to immunity. In addition to applying to a state agency, the Eleventh Amendment can apply to the state agency's officers. *Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908; *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982). The Eleventh Amendment bars suits against state officers when they are sued in their official capacity, not when they are sued in their individual capacity. *Gamble*, 779 F.2d at 1512–13. Normally, the question of whether Eleventh Amendment immunity attaches to state officers rests upon "whether the plaintiff is reasonably seeking relief from the state coffers or from the individual's assets." *Gamble*, 779 F.2d at 1513 (citation omitted). *See Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Here, Plaintiff has sued the individual Defendants' only in their official capacity as agents of the GDOT,[11] therefore, Plaintiff is clearly seeking compensation from the GDOT for these agents' actions. Any funds coming from the GDOT to indemnify these agents would have come from the same source as the funds needed to satisfy any judgment against GDOT, if GDOT had not been entitled to immunity. Consequently, because the GDOT is entitled to immunity, the individual Defendants are also entitled to Eleventh Amendment immunity in this action. Therefore, the Court also grants Defendants' Motion JNOV as to the individual Defendants.

Accordingly, this Court GRANTS Defendants' Motion for Judgment Notwithstanding the Verdict as to all Defendants, and dismisses this case for lack of jurisdiction. Defendants' Motion to Stay Proceedings and Defendants' Motion to Review Taxation of Costs are DENIED as Moot.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

This case is before the Court on Plaintiff's Motion for Reconsideration of the Court's October 18, 1991, Order which granted Defendants' Motion for Judgment Notwithstanding the Verdict.

After a jury trial which rendered a verdict for the Plaintiff, this Court concluded that the Eleventh Amendment barred this action as the Georgia Department of Transportation (GDOT), a state agency, had not waived its Eleventh Amendment immunity. The Court distinguished between a state's sovereign immunity from suit in a state court and its Eleventh Amendment immunity from suit in federal court. The Court concluded that although the GDOT had waived its sovereign immunity in state court, that waiver did not act as a waiver of the GDOT's Eleventh Amendment immu-

---

10. The Plaintiff may think that if she originally filed this suit in state court, GDOT could have used 28 U.S.C.A. § 1332 and § 1441 to remove this case to federal court causing the federal court to dismiss under the Eleventh Amendment, therefore, preventing the injured party any legal redress. That proposition, however, is untrue because the Eleventh Amendment is jurisdictional in nature. *See Edelman*, 415 U.S. at 677–78, 94 S.Ct. at 1362–63.

The Eleventh Amendment was specifically designed to circumscribe the grant of jurisdiction under Article III of the United States Constitution. *See* 13 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, Federal Practice and Procedure § 3524 (2nd ed.1984). Accordingly, the Court is prevented from hear-

ing cases falling under the auspices of the Eleventh Amendment. *See Simmons v. State of California, Dept. of Indus. Relations*, 740 F.Supp. 781, 784–85 (E.D.Cal.1990). So regardless of the statutory mechanism used to try and obtain federal jurisdiction, the Eleventh Amendment would prevent the District Court from hearing the action if the suit was against a state who had not explicitly and unequivocally waived its Constitutional immunity. Accordingly, Plaintiff could have filed this lawsuit in state court and Defendant would have been jurisdictionally barred from removing the suit to federal court.

11. *See* Complaint ¶ 15; Certificate of Interested Parties ¶ 1; Pre–Trial Order ¶ 13, Attachment "C" ¶ 1 p. 2, Attachment "D", Attachment "E" ¶ 4.

nity in federal court. Consequently, the GDOT was immune from suit in federal court and, accordingly, the Court granted Defendants' Motion for JNOV.

In addition to deciding that the GDOT was immune from suit, this Court held that the individual Defendants were also immune from suit because although they were individually identified, Plaintiff sued them as agents of the GDOT and she was seeking recovery from the same state fund that would have covered any verdict rendered against the GDOT. Therefore, the real party in interest was not the individual defendants, but was the GDOT and its Liability Trust Fund.

Plaintiff contests both these rulings. First, Plaintiff relies on her previous arguments concerning the GDOT and states that because the verdict against the GDOT would be satisfied out of the Liability Trust Fund established by the Georgia Department of Administrative Services (DOAS), the suit is not one which would affect the public fisc and, consequently, she argues that the Eleventh Amendment does not apply in this case. Second, Plaintiff argues that even if the GDOT is immune from suit, the individual Defendants are not immune because they were sued in their individual capacities. She claims that this assertion is evidenced by the fact that she filed *fieri facias* against the Defendants' individual estates and that she proved during the trial that the individuals acted outside the scope of their authority when they did not follow the Manual of Uniform Traffic Control Devices (MUTCD), which was adopted by the GDOT as state policy.

Defendants contend that the Court was correct in its previous Order when it held that the suit was against the individual defendants in their official capacity only. Defendants argue that because the Plaintiff was seeking compensation from the DOAS Trust, the suit was really against the GDOT and not against the individual officers in their individual capacities. Furthermore, Defendants argue that the Plaintiff did not establish that the MUTCD was anything more than an advisory opinion concerning the setting of the timing of the traffic signal in question. Consequently, Defendants conclude that Plaintiff did not prove that they violated any state law or that they acted outside the scope of their employment.

 As to the first part of the Court's October 18th Order, the Court again concludes that the GDOT has not waived its Eleventh Amendment immunity. A waiver of a state's sovereign immunity in state court cannot be interpreted, by itself, to include a waiver of a state's Eleventh Amendment immunity from suit in federal court. *Karpovs v. Mississippi,* 663 F.2d 640, 645 (5th Cir.1981); *American Tel. & Tel. Co. v. Madison Parish Police Jury,* 465 F.Supp. 168, 170 (W.D.La.1977). Unless there exists an unequivocal waiver of a state's Eleventh Amendment immunity, a federal court does not have jurisdiction over a suit against a state or one of its agencies. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1984); *Pennhurst State School & Hosp. v. Halderman* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1983); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Accordingly, the mere creation of a state insurance fund, without more, cannot act as a waiver of the state's Eleventh Amendment immunity in federal court, even though it acts as a waiver of that state's sovereign immunity in state court. Therefore, the GDOT has not waived its immunity in federal court and, consequently, the Court does not have jurisdiction over the GDOT in this action.

In addition to covering a state agency, the Eleventh Amendment can also immunize the agency's officers. *Pennhurst State School & Hosp. v. Halderman* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1983); *Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Florida v. Treasure Salvors, Inc.,* 458 U.S. 670, 684, 102 S.Ct. 3304, 3314, 73 L.Ed.2d 1057 (1982). This Eleventh Amendment protection, however, only applies to suits against officials in their official capacity, not in their individual/personal capacity. *Hafer v. Melo,* — U.S. —, —, 112 S.Ct. 358, 364–65, 116 L.Ed.2d 301, 313 (1991); *Gamble v. Florida*

*Dept. of Health & Rehabilitation Serv.,* 779 F.2d 1509 (11th Cir.1990). "In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity or both. 'The course of [the] proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (citation omitted). *See Lundgren v. McDaniel,* 814 F.2d 600, 603–04 (11th Cir. 1987) (suit determined to be a personal capacity suit against officials because defendants raised qualified immunity defense which is only applicable in personal capacity suits).

■ In a case where the capacity in which the Defendant is sued is ambiguous, the question of whether the individual official is entitled to Eleventh Amendment immunity rests upon "whether the plaintiff is reasonably seeking relief from the state coffers or from the individual's assets." *Gamble,* 779 F.2d at 1513 (citation omitted). *See Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

> "The Eleventh Amendment does not bar an action against a state official that is based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional. *In such an action, however, the Amendment places a limit on the relief that may be obtained by the plaintiff. If the action is allowed to proceed against the officer only because he acted without proper authority, the judgment may not compel the State to use its funds to compensate the plaintiff for the injury."* *Treasure Salvors, Inc.,* 458 U.S. at 689, 102 S.Ct. at 3317 (emphasis added).[1]

■ In this case, the Court concludes that Plaintiff was seeking to satisfy her judgment from the Liability Trust Fund which covered the individual Defendants. First, Plaintiff offered into evidence, in camera, the insurance policy which covered the defendants.[2] *See* Plaintiff's Exhibit 14. Second, although the officers of GDOT were specifically named, Plaintiff only referred to them as agents of GDOT.[3] Third, Plaintiff asked for and received an instruction on agency law in the jury instructions. Finally, Plaintiff specifically stated that "[she] is secure in the ultimate enforcement of her judgment through the DOAS Trust Fund and agrees to stay enforcement pending resolution of post-judgment issues raised by the Defendants." *Plaintiff's Response to Defendants' Motion to Stay Enforcement of Judgment.* Consequently, Plaintiff's whole focus was centered around establishing that the Defendants were acting within the scope of their employment when they negligently failed to supervise the timing of the traffic light in question.[4] The combination of all these

---

1. " 'Where the action is in essence one for the recovery of money from the state, the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.' " *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1973) (quoting *Ford Motor Co.,* 323 U.S. at 464, 65 S.Ct. at 350).

2. The Georgia Supreme Court has held that the establishment of the Liability Trust Fund at issue in this case is an insurance fund which waives the GDOT's sovereign immunity in state court. *Price v. Department of Transportation,* 257 Ga. 535, 361 S.E.2d 146 (1987); *Martin v. Georgia Dept. of Public Safety,* 257 Ga. 300, 357 S.E.2d 569 (1987), *cert. denied,* 484 U.S. 998, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988). As stated above, and in this Court's previous Order, however, this waiver in state court does not affect the state's Eleventh Amendment immunity in federal court.

3. *See* Complaint ¶ 15; Certificate of Interested Parties ¶ 1; Pre–Trial Order ¶ 13, Attachment "C" ¶ 1 p. 2, Attachment "D", Attachment "E" ¶ 4. The caption of the complaint is not fully determinative, by itself, of the capacity in which a defendant is sued. *Lundgren,* 814 F.2d at 604 n. 2.

4. Plaintiff's argument that the GDOT officials did not follow state policy misses the point. On a motion JNOV, the Court "must view the evidence favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence." 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 2524 (1971). Therefore, assuming the jury believed all Plaintiff's allegations and that the officials

actions clearly shows that Plaintiff was seeking to tap into the Liability Trust Fund if she won a verdict in her favor.[5]

The Court concludes that this fund is a state fund. Although it is a liability reserve fund which is separate from the general fund of the Georgia legislature, the Department of Transportation pays money (a premium) into this fund to have its employees covered by it. All the money accumulated in this fund is state money set aside to cover these incidents. If the fund is depleted it will be state money which refills the fund. The fact that this fund is a form of insurance does not affect the reality that the money which would be paid to satisfy the Plaintiff's judgment would come from state funds. *Kroll v. Board of Trustees of Univ. of Ill.*, 934 F.2d 904, 908 n. 3 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991); *In re San Juan Dupont Plaza Hotel Fire Litigation,* 888 F.2d 940, 945 (1st Cir.1989); *Cannon v. University of Health Sciences/The Chicago Medical School,* 710 F.2d 351, 356–57 (7th Cir.1983) (the fact that the funds to pay the judgment might come from insurance or federal funds does not change the fact that the plaintiff seeks recovery of state funds); *Markowitz v. United States,* 650 F.2d 205, 206 (9th Cir. 1981).

Plaintiff also relies on the fact that she filed *fieri facias* against the separate defendants' estates after she received a verdict in her favor. This post-hoc action, however, cannot overcome the fact that Plaintiff gave no indication prior to her filing the *fieri facias* that she was seeking to collect from the defendants individually. This ex post facto attempt to remedy a lethal mistake in her case cannot stand to counteract her previous assertions. As stated above, her previous behavior demon-strates that she was seeking compensation from this Trust Fund. Consequently, because Plaintiff sought compensation from a state fund the real party in interest is the state and, accordingly, these Defendants are entitled to immunity in federal court.

Accordingly, the Court reaffirms its grant of Defendants' Motion JNOV and DENIES Plaintiff's Motion for Reconsideration.

IT IS SO ORDERED.

---

were negligent as Plaintiff claimed, she still cannot escape the Eleventh Amendment immunity because she was seeking compensation from a state fund, not from the assets of the individual defendants.

5. The Liability Trust Fund covers "injury ... caused by or resulting from error, omission or negligence in the performance of duties within the scope of an insured's employment with a participating entity that has purchased coverage prior to the date of occurrence." BROAD FORM STATE EMPLOYEE LIABILITY AGREEMENT, Part 1. "The Fund will pay on behalf of any insured all sums which the insured shall become legally obligated to pay as damages, court costs, litigation expenses and attorney fees...." *Id.* at Part 1(A) "Comprehensive General Liability Insurance."